[No. 19303. Department Two. July 18, 1925.]

PRESCOTT U. SUNDAY et al., *Respondents*, v. GEORGE MOORE et al., *Appellants*.[1]

FORCIBLE ENTRY AND DETAINER (11)—EVICTION—EVIDENCE—SUFFICIENCY. Findings that defendant M aided defendant T, and participated in an eviction, are sustained where M took more than a passive part, employed the persons who removed plaintiff's effects, and furnished T with supplies and assistance to maintain possession.

SAME (12)—DAMAGES—RENTAL VALUE OF PREMISES. Under Rem. Comp. Stat., § 827, authorizing damages in forcible entry and detainer in the amount alleged and proved on the trial, the value of the use of the premises to the time of the trial is a proper element of the damages, where it was alleged in the complaint.

SAME (1)—STATUTORY PROVISIONS—POSSESSION FOR "FIVE DAYS." One who moved into premises on May 29, and was evicted on June 4, following, was in possession for five full days, within the forcible entry and detainer act, Rem. Comp. Stat., § 811.

SAME (3)—DEFENSES—TITLE AND RIGHT TO POSSESSION. The forcible entry and detainer acts, being peace statutes, the fact that defendants' possession was wrongful is immaterial, where defendant was in possession for five days preceding plaintiff's entry, as provided in Rem. Comp. Stat., § 811.

SAME (4)—PARTIAL POSSESSION—RIGHT TO SUE. The fact that part of premises in the wrongful possession of defendants was

[1]Reported in 237 Pac. 1014.

leased to and in the possession of a third person, does not preclude the possession of the defendants, as against the plaintiff in an action of unlawful detainer.

APPEAL (488)—DECISION—REMAND FOR FURTHER ACTION. Where, pending appeal from an erroneous judgment for plaintiff in unlawful detainer, plaintiffs' rights may have been terminated by subsequent proceedings in another action, the cause will be remanded with direction to inquire into the present status of the parties with relation to the property and enforcement thereof, with recovery of the damages for the forcible entry.

Appeal from a judgment of the superior court for Pierce county, Card, J., entered November 12, 1924, upon findings in favor of the plaintiffs, in an action of forcible entry and detainer, tried to the court. Remanded for further proceedings.

*Chas. W. Stewart,* for appellants Moore.

*Wesley Lloyd,* for appellant Truelove.

*J. Charles Dennis,* for respondents.

FULLERTON, J.—This is an action of forcible detainer, brought under the second subdivision of § 811 of the code (Rem. Comp. Stat.) [P. C. § 7969]. The real property involved is situated in the city of Tacoma. The title to the property at the time of the transactions which gave rise to the controversy, and at the time of the trial in the court below, was in one Mary A. Lemon, a widow. On September 1, 1920, the appellant Amanda Truelove contracted to purchase the property for a consideration of $14,000, payable in part in installments. The purchaser made the installment payments somewhat intermittently, but made substantial payments, so that on January 15, 1923, the balance remaining due was $3,000. At this time a new contract was entered into by which the owner contracted to sell the property for that sum to one Eliza Truelove, the mother of the appellant; the evidence showing, however, that the actual purchaser was the

appellant, the mother acting only as trustee for her. This contract also called for installment payments, and the appellant became delinquent thereon. Under the terms of the contracts, the appellant was entitled to the possession of the property, but it appears that, subsequent to the date of the last contract, she did not maintain an actual possession of the residence on the property, either in person, or by tenant, and that she suffered the property to deteriorate, and that for a time her whereabouts were unknown.

On May 17, 1924, after the appellant had become delinquent on the installment payments, and during the time her whereabouts were unknown, the owner contracted to sell the property to the respondents, Sunday, at an agreed price of $2,700, payable in installments. The contract provided that the purchasers should make certain repairs to the property. It also recited the outstanding contract of purchase held by the appellant and provided that the owner should commence an action to quiet her title against the contract; further providing that, in the case she failed in the action, she would repay to the respondents the amount of the installment then paid, and pay them for the value of the improvements they should make on the premises. The contract gave the respondents the right of possession. The respondents immediately began the work of improvement, and by May 29th following had so far completed it as to make the house on the land habitable, and moved in on that day.

The appellant Truelove returned to Tacoma sometime in May. The action to quiet the title to the property had at that time been commenced and she immediately busied herself in an attempt to raise the money necessary to complete the payments on her contract. On May 31, she succeeded in borrowing the money from the appellants Moore. As security for the money bor-

rowed, she gave them a warranty deed to the property; entering, however, into a collateral contract with them which expressed the purpose of, and the consideration for, the deed. No notice of forfeiture of her contract had been given to the appellant Truelove, and after procuring the money she answered in the suit to quiet title, tendering and paying into court the balance due on the contract. This suit had not been determined at the time of the trial of the cause now before us, and the record does not show its result, but it is stated in the brief of one of the counsel that the appellant Truelove prevailed in the suit; that the court adjudged that she was entitled to a conveyance of the property, that such a conveyance was directed and was afterwards made.                                    . · . .

The record shows, also, that the appellant Truelove had never entirely abandoned her possession. While she had suffered the house to become so far out of repair as to be uninhabitable, there was a garage on the premises which she had let to certain Japanese, and that these were in possession of the garage at the time the respondents Sunday began their improvements and were in possession at the time they moved into the house.

In the nighttime of June 4, 1923, while the respondents Sunday were temporarily absent from the premises, the appellant Truelove entered the premises, caused the personal belongings of the respondents to be removed therefrom, and refused to allow them to reenter on their return. The charge against the appellants Moore is that they aided and abetted the appellant Truelove in removing the respondents' effects from the house, and aided and abetted her in maintaining possession of the premises subsequent to that time.

The respondents served notice upon the appellants

to quit and surrender the property within three days, and upon their refusal so to do, began the present action to recover the possession. The trial was by the court without a jury. The court found that the respondents had been unlawfully evicted from the premises, that they had suffered damages thereby in the sum of $465, and it entered a judgment restoring the respondents to the possession of the property and allowed them a recovery for the damages suffered. The appellants Moore and the appellant Truelove prosecute separate appeals, the Moores giving bond to supersede the money judgment and Truelove giving an appeal bond only.

The defense of the Moores was that they were not parties to the eviction, and to this question their arguments are mainly directed. But we think we need not discuss the facts at length. While their own testimony would warrant a conclusion different from that reached by the trial judge, the evidence on the other side tended to show that they had more than a mere passive part in the transaction; it shows that they not only employed the persons who removed the effects of the respondents from the house, but that they furnished their co-appellant with such supplies and assistance as enabled her to maintain possession against the return of the respondents. The trial judge held that the preponderance of the evidence sustained this latter view, and our examination of the evidence does not convince us that his conclusion is against the preponderance of the evidence.

The appellants say, however, that the evidence fails to show that they ever were in possession of the property, and fails to show that subsequent to the entry of their co-appellant they took any part in maintaining her possession, and that in consequence the court was in error in holding them responsible for the damages

subsequently accruing. But the evidence also shows that there was no further call for action on their part. The respondents at all times conducted themselves as law-abiding citizens. After their effects had been removed from the house and they had been refused entry, they made no attempt to regain possession either by force or stratagem; they gathered up and stored their effects and resorted to the courts for a vindication of their rights. The contention, however, mistakes the rule. A person is not only responsible for his overt acts, but he is responsible for the consequences of his acts. Keeping the respondents out of possession until the court ordered their reinstatement was one of the consequences of the appellants' act, and no reason exists in law why they should not be held responsible for the damages caused thereby.

The court allowed, as an element of damage, the value of the use of the premises accruing between the time of the ejection and the time of the trial, and it is contended that this is not a proper element of damage. But we think the contention without foundation. This element of damage was claimed in the complaint, and the statute provides (Ib., § 827) [P. C. § 7985], that the court in this form of action shall assess the damages "alleged in the complaint and proved on the trial" occasioned to the plaintiff by any forcible entry, or by any forcible or unlawful detainer. Manifestly, the loss of the use of the premises—in other words, the loss of the rental value—is a damage suffered by the person from whom the property is unlawfully detained. The authorities generally so announce the rule. Thus, in 26 C. J. 863, § 136, where the cases will be found collected, the rule is stated in this language:

"Where under the statute damages are recoverable, the value of the rents and profits of the land is an element of damage which is generally to be taken into con-

sideration, without regard to the nature or extent of the right or title by which possession was held, and according to some decisions this is the measure of damages.''

Our own case of *Huston v. Big Bend Land Co.*, 106 Wash. 130, 179 Pac. 101, is not contrary to the rule. On the contrary, the rule was there recognized. The denial of the right of recovery for the value of the use of the premises was based on the fact that the plaintiff did not demand to be restored to the premises or institute proceedings to effect a restoration for more than three years after the eviction occurred. We held that this delay constituted a waiver of damages for the loss of the use of the premises, not that such damages were not recoverable in a proper case.

The appellant Truelove, while adopting the contentions made by her co-appellants, makes the additional contention that the evidence does not justify the conclusion that she wrongfully entered upon the respondents' possession or wrongfully detained the premises from the respondents. The statute provides:

''Every person is guilty of a forcible detainer who either,—

''1.  .  .  . , or,

''2.  Who in the night-time, or during the absence of the occupant of any real property [unlawfully] enters thereon, and who, after demand made for the surrender thereof, refuses for the period of three days to surrender the same to such former occupant. The occupant of real property within the meaning of this subdivision is one who, for the five days next preceding such unlawful entry, was in the peaceable and undisturbed possession of such real property.'' Rem. Comp. Stat., § 811.

The first ground for the contention is that the evidence fails to show that the respondents were in the peaceable and undisturbed possession of the property

for five days next preceding the entry thereon of the appellant. But we think the evidence is sufficiently clear upon this point. While the respondent testifying fixed the date he and his co-respondent actually moved into the house on the premises by its relation to certain other transactions the date of which he did remember, rather than by an independent recollection of the date, the exact date was not thereby left uncertain. His testimony shows that he and his co-respondent moved in on May 29, 1924, and were evicted on June 4th of the month following. Five full days elapsed, even if both the first and the last day be excluded from the calculation.

The next ground is that the right of possession was at all times in the appellant, that the respondents' entry was thus in itself wrongful, and that no rights could be acquired by a wrongful entry. But this is not a material inquiry. One may not lawfully enter upon property of which he has the undoubted right of possession and forcibly detain it from one who has been in possession of it peaceably and undisturbed for five days immediately prior to such entry. As we said in *Gore v. Altice,* 33 Wash. 335, 74 Pac. 556:

"The forcible entry and detainer law has always been recognized, ever since its enactment, as a law in the interest of peace, or to prevent violations of the peace and acts of violence in contentions over the possession of real property. It is a provision for a speedy determination, not of any title to the real estate, or of the right of possession, but of the question of who was in actual possession, and if such actual possession was disturbed; and the only question is, was the occupant in the actual and peaceable possession of the property at the time the possession was wrested from him."

To the same effect are the cases of *Chezum v. Campbell,* 42 Wash. 560, 85 Pac. 48, 7 Ann. Cas. 921, and *Rid-*

*path v. Denee,* 85 Wash. 322, 148 Pac. 15, in the latter of which we said:

"These statutes [the statutes of forcible entry and detainer] are clearly peace statutes, and the issues in a case of this kind are but two: First, was the plaintiff, for five days prior to the entry of the defendant, in the peaceable and actual possession of the land, and second, was the entry of the defendant a forcible entry and an unlawful detainer? The statute makes no provision for the trial of title or the right of possession in such a case. Other remedies are afforded by other statutes to try title or right of possession. This statute does not contemplate that a person, even though he be entitled to possession, may, by force or stealth, obtain possession, and thereby put upon the plaintiff the burden of proving the paramount title or a paramount right of possession."

The final ground for contending that the action will not lie is founded on the fact that the Japanese tenants were in possession of a part of the property. It is argued that this precludes the possession of the respondents "from being a full and undisturbed possession, and from being a possession adverse to the rights of this appellant." We cannot so conclude. The respondents, as against the appellant, had the sole and exclusive possession of the property, that part of it occupied by the Japanese as well as that part of it not so occupied. This is a sufficient possession to permit the possessor to maintain the action. It must be remembered that the statute is one in the interest of peace; that its primary object is to prevent even rightful owners from taking the law into their own hands and attempting to recover and hold by violence what the remedial processes of the courts would give them in a peaceful manner; and, clearly, a wrongful entry upon and a forcible detainer of property held in the manner here shown is as much conducive to a breach

of the peace as it would have been had the possession of the entire property been absolute.

As the record now appears, it is within the province of this court to direct an affirmance of the judgment entered in the court below without further inquiry. But enough appears in the record to show that, by matters occurring subsequent to the entry of the judgment, there is possibly such a change in the relation of the parties to the property as to make such a direction inadvisable; it could be that the owner failed in her suit to quiet title to the property against the appellant, and that the appellant prevailed in that suit to the extent that she is now entitled to possession and is in possession in virtue of that proceeding. If this be the situation, it is needless to execute the present judgment to the extent of restoring possession to the respondents, since they must be immediately ousted therefrom by a subsequently acquired superior right.

The order of this court will be, therefore, that the cause be remanded to the superior court with directions to that court to inquire into the status of the parties with relation to the property; if it be found on such inquiry that the appellant is in possession in person or by her successors in interest in virtue of a decree in the action to quiet title, such possession will not be disturbed, and the judgment will be enforced only in so far as it allows a money recovery; if the contrary appears, the judgment will be enforced as entered. The respondents will recover costs in this court.

TOLMAN, C. J., MACKINTOSH, and MITCHELL, JJ., concur.