FORRESTER v. COOK et al.

No. 4843. Decided October 11, 1930. (292 P. 206.)

138

*Henry D. Moyle* and *J. M. Christensen,* both of Salt Lake City, for appellants.

*Leslie Frazer,* of Salt Lake City, for respondent.

FOLLAND, J.

This action is one in unlawful detainer wherein plaintiff by her complaint sought restitution of the premises described, being an apartment house, and damages for the unlawful withholding thereof, and for an attorney's fee. She also prayed that damages be trebled. An answer and counterclaim were filed by defendants and on motion of plaintiff the counterclaim was stricken. On the morning of the day of trial defendants filed amendments to the answer disclaiming any interest in the property in dispute as of that date and tendering possession thereof to plaintiff. The cause was thereupon tried upon the issues only of damages and attorney's fee. The court found that defendants unlawfully detained the premises from January 27th (date of expiration of five-day notice) to June 6th (date of trial) and the reasonable value of the use and occupancy of said property to be $210 per month; that the reasonable expense of maintaining and operating the property during the period of detention was 25 per cent of the rental value, or $52.50 per month, and gave judgment in plaintiff's favor for $690.50 damages; that being the rental value during the period mentioned less the amount indicated for maintenance and operation. This sum was trebled and judgment was entered for a total sum of $2,071.50. The court found that plaintiff was not entitled to recover an attorney's fee. Defendants made

and served a motion for modification of the findings, conclusions of law, and judgment. The court after a hearing modified the conclusions of law and judgment by allowing $910 for use and occupation of the premises, which sum the court refused to treble. Judgment as modified was entered in favor of plaintiff for $910 only. In making this modification the court granted only part of the request made by defendants in their motion.

The defendants appealed from the judgment assigning many alleged errors. The plaintiff cross-appealed and assigned as error the refusal of the court to give judgment for attorney's fee and its refusal to treble the damages assessed for use and occupation of the premises.

We are first met with a motion by respondent to dismiss the appeal upon the ground "that the order appealed from is not a final judgment and therefore not appealable." The notice of appeal is as follows:

"You and each of you will please take notice that the defendants in the above entitled action hereby appeal to the Supreme Court of the state of Utah from the whole and every part of the judgment given you and entered by the above entitled Court in favor of the plaintiff and against the defendants on the 8th day of December, 1928, for the sum of $910.00, together with costs of suit in the sum of $27.90."

It is contended by plaintiff that this notice indicates an appeal only from the order of modification of judgment made on the 8th day of December and is not an appeal from the judgment entered on the 6th day of September, 1928. We think this position untenable because it is apparent that the appeal was taken, and was intended to be taken, not from the order of December 8th, but from the judgment and from the whole thereof as it took final form by modification or amendment on the 8th of December. A notice, such as the one here, indicating an intention to appeal from the entire judgment, with a description of judgment as dated the 8th of December and specifying the amount of the judgment,

is a sufficient description. "The time of amendment of a judgment, order or decree, must be taken as the true date of rendition or entry, unless the amendment is in particulars not changing its character." 3 C. J. (Appeal and Error, § 1058) 1059; *Mann* v. *Haley*, 45 Cal. 63; *Spencer* v. *Clark,* 54 Utah 83, 179 P. 741; *Candland* v. *Mellen*, 46 Utah 519, 151 P. 341; *Boucofski* v. *Jacobsen*, 36 Utah 165, 104 P. 117, 26 L. R. A. (N. S.) 898. The cases cited by respondent, *Schmidt* v. *Dreyer*, 21 Colo. 100, 39 P. 1086, and *Cullen* v. *Harris*, 27 Utah 4, 73 P. 1048, go to the point that appeals can be taken only from final judgments and not from orders or rulings made either before or after judgment.

On or about May 19, 1924, plaintiff and defendants entered into a contract wherein the plaintiff agreed to sell and the defendants agreed to buy a certain apartment house in Salt Lake City called the Ivy Apartments for $17,100, of which $5,420.11 was credited as a cash payment, the balance of the purchase price to be paid in quarterly installments of $300 each to apply on principal and interest. The "cash" payment included a $3,000 mortgage on the apartment house theretofore made by plaintiff in favor of Walker Bros. Bankers, which the defendants agreed to assume and pay. The balance of the "cash" payment was made up of equities in two pieces of real estate. On May 24, 1924, a supplemental agreement was signed and acknowledged by plaintiff wherein it was said, after explanatory recitals, "it is by these presents understood and agreed that said Cook & Noyes have the privilege to extend said $3000 mortgage for an additional term of three years from the date of its maturity." The quarterly payments were made by defendants each and every quarter until November of 1927. The quarterly payment due November 17th was never paid. The $3,000 mortgage due Walker Bros. Bankers, which in the meantime had been renewed or extended once, became due and payable October 11, 1927. This mortgage was not paid. A dispute arose between the parties with respect to the renewal of this mortgage and other matters, and thereafter no further pay-

ments were made on the contract. Defendants called upon the plaintiff to renew the mortgage and offered, if she did so, to pay the quarterly installment then past due. This plaintiff refused to do. The contract of sale contained a forfeiture clause in the following language:

"In the event of a failure to comply with the terms hereof by the buyer or upon failure to make any payment when the same shall become due, or within sixty days thereafter, the seller shall be released from all obligations in law and equity to convey said property, and the said buyer shall forfeit as liquidated damages all payments which have been made theretofore on this contract, and the buyer agrees that the seller may at his option re-enter and take possession of said premises without legal process as in its first and former estate, together with all improvements and additions made by the buyer thereon and the said additions and improvements shall remain with the land and become the property of the seller, the buyer becoming at once a tenant at will of the seller. It is agreed that time is of the essence of this agreement."

On January 21, 1928, plaintiff served upon defendants a notice declaring a forfeiture of the contract and demanding possession of the property. After particularly reciting the terms of the contract and the alleged acts of default, the notice contained the following:

"You and each of you will further take notice that by reason of your failure to make the payments hereinbefore referred to, you and each of you under the terms of said agreement have become and now are and are hereby declared to be tenants at will of the said Diana Forrester; and as such you and each of you are hereby required to vacate the said property hereinbefore described, and to surrender possession thereof to the said Diana Forrester within five days from the date of the service of this notice upon you; and upon your failure so to do legal proceedings will be instituted against you and each of you to recover possession of the said property."

Upon failure of defendants to comply with the notice and deliver possession of premises within five days, this action in unlawful detainer was commenced on January 28, 1928. A defense relied upon by defendants was that the supplemental contract set out above failed to express the exact

intent of the parties. They alleged that it was intended that the mortgage should be renewable for additional terms of three years instead of for one such term; that the words "an additional term of three years," through a mistake of the scrivener, were written into the agreement instead of the words "additional terms of three years." A reformation of the agreement was prayed for on grounds of mutual mistake. Defendants proceeded upon the theory that if they were entitled to a reformation of the supplemental agreement of May 24th so that it provided for continuing renewals of the mortgage instead of merely one renewal or extension, then they were not liable in damages because plaintiff could not declare a forfeiture of the contract at a time when she herself was in default in failing to procure a renewal of the mortgage, assuming that the burden was upon her to procure such, and execute the same. This issue was fully tried. The trial court made findings against defendants' contention. It found that the supplemental agreement was executed by plaintiff without any consideration whatsoever and was and is unenforceable against her; that defendants exercised and exhausted the privilege granted in said supplemental agreement by procuring one extension of the mortgage; that the supplemental agreement did not fail to express the exact intent of the parties; and that it was not the intent of the parties to provide additional terms of three years instead of an additional term of three years.

Appellants assign error in these findings and contend that the court should have found from the evidence that there had been a mutual mistake, and should have entered a decree directing the reformation of the supplemental agreement. The defendants cannot prevail in this contention. There is a presumption that the written contract correctly evidences the agreement of the parties. Reformation of such an instrument will not be granted upon a probability and usually not upon mere preponderance of the evidence, but only upon certainty of the error. *Weight* v. *Bailey*, 45 Utah 584, 147 P. 899. A party seeking relief by

reformation of a contract which is presumed to contain all the terms agreed upon must establish a mutual mistake by evidence that is clear, satisfactory, and convincing, and not by a mere or a bare preponderance of the evidence (*Cram* v. *Reynolds,* 55 Utah 384, 186 P. 100), unless a fair preponderance of the evidence clearly and satisfactorily convinces the court of the error. The two defendants testified that in the conversations had prior to the making of the supplemental agreement it was stated that plaintiff would grant them the privilege of renewing this mortgage for additional terms. The plaintiff and her daughter testified just as positively that the understanding at the time of these conversations was that the renewal should be for an additional term of three years only. The plaintiff stated that she would not have signed the supplemental agreement if it had not been restricted to the one extension. The attorney who drafted the paper testified that it was the understanding between the parties that it should be for additional terms and that the language in the instrument was probably the result of a typographical error of his stenographer. A review of the whole evidence does not establish defendants' claim with that degree of certainty which is necessary to authorize the reformation of a written instrument four or five years after its execution or justify this court in reversing the findings of the trial judge who had the advantage of seeing the witnesses and listening to their testimony. These findings therefore must be affirmed.

Defendants claim there is no competent evidence in the record to support a judgment for $910, or any other amount, as damages or reasonable value for the use and occupation of the premises, for the reason that the evidence adduced does not conform to the true measure of damages. The plaintiff by her complaint filed January 27, 1928, merely asked for possession of the premises. On January 31st of the same year she filed an amendment to the complaint by adding a paragraph as follows:

"That the value of the use and occupancy of said apartment house is the sum of $7.50 per day; and that by reason of the matters and things hereinbefore alleged, plaintiff has been and is being damaged in said amount for each day since and including the 21st day of January, 1928."

She also made an addition to the prayer of the complaint as follows:

"And for damages in the sum of $7.50 per day from and including the 21st day of January, 1928, and that said damages be trebled."

At the trial plaintiff called as a witness a qualified realtor to testify as to the rental value of the premises. On direct examination he testified as follows:

"Q. What is your opinion, Mr. Hurd, as to the reasonable value of the use and occupancy of the Ivy Apartments from the 21 day of January, 1927, down to the present time? A. I would place the rental value on the front apartments, which are four apartments, two lower and two upper, running from—

"Q. The question simply calls for the apartment house? A. There are four apartments in the front part of the place. Upon those I would place a rental value of $27.50 to $30.00 for each apartment, and the rear at $25.00 for each apartment.

"Q. That is per month? A. Per month."

On cross-examination the witness testified:

"Q. Of course you did not take into consideration the necessary vacancies that occur in apartments for sometimes extended periods? A. My estimate is based on what they should bring.

"Q. If rented? A. Well, they should be rented if they are properly cared for.

"Q. You cannot say that there are no vacant apartments in Salt Lake? A. I did not say that."

The court, not being satisfied with the state of the record on this point, then asked:

"Mr. Hurd, suppose you wanted to rent an apartment house, and then in turn sub-let apartments. Now, in that sense, what would be the reasonable rental value of the premises? A. The original lessor would probably have to count it at a little less figure to handle it, but that was the maximum figure that I put.

"The Court: Well, in that sense, what would you say? Here you have got to go to the apartment and pay for it; you pay for the coal bills, the water, and a lot of things—

"Mr. Moyle (Counsel for defendants) : The taxes.

"The court: What would you be willing, we will put it that way, what rent would you be willing to pay for this apartment house?"

Defendants' attorney objected to this question on the ground it was incompetent, irrelevant, and immaterial, whereupon the court withdrew the question. This is all the evidence on the subject of rental value or value of the use and occupancy of the property. It will be seen that the question put to the witness called for an answer as to the reasonable value of the use and occupation of the Ivy Apartments as an apartment house, and not for the opinion of the witness as to what each apartment might be rented for if the house were being properly managed and operated. The answer, however, does not given the information sought by the question. The witness, answering a question put to him by the court, indicated that a proper answer, if made by him, would have been in some sum less than the total of the rentals of the several apartments. There is no evidence in the record therefore as to the rental value or value of the use and occupation of the apartment house as distinguished from the rental value of the several apartments. With only this evidence before it the trial judge experienced difficulty in making a finding as to the amount of damages. He found that the rental value of the premises was $210 per month, and also found that the reasonable expense of operating and maintaining the apartment house was $52.50 per month. He deducted the last sum from the first and gave judgment for the period of detention at the rate of $157.50 per month. At the hearing of the motion for modification of the judgment the court was convinced that there was no evidence to support the finding that the reasonable expense of operating and maintaining the apartment house was $52.50 per month. He made no change in this finding, and it was not stricken, and was not disturbed by the court in making the

modification of the conclusions of law and the judgment. The amount of the amended judgment, $910, is based upon the total rentals of the several apartments. The true measure of damages would be the rental value or the reasonable value of the use and occupancy of the premises as a whole, and that would necessarily be less than the sum of the rental value of each of the several apartments.

The damages which may be recovered in an action such as this one are measured by the rule that they must be the natural and proximate consequences of the acts complained of and nothing more. Rents and profits, or rental value of the premises, during detention are included in damages. 26 C. J. (Forcible Entry & Detainer, §135) 862; *Sunday* v. *Moore,* 135 Wash. 414, 237 P. 1014; *Noyes* v. *French Lumbering Co.,* 80 Minn. 397, 83 N. W. 385. It is the rental value of the premises as a whole (an apartment house) which is the loss suffered by plaintiff. Had she been in possession during the period complained of the expense of management and operation would have been borne by her. The reasonable value of the use and occupation would be made up of the gross rental value of the several apartments, and deducting from such sum a proper allowance for such expenses as management, collection of rents, repairs, heating if at the expense of the operator of the house, allowance for vacancies, water rates, and such items, if appropriate as applied to the operation of this apartment house. Such expenses would be borne by the person operating the house, whether plaintiff or defendants, and must be deducted from total rentals to arrive at a fair rental value of the whole property. The wisdom of the rule is well illustrated by applying it to a hotel or office building. Certainly no one would contend that the fair value of an office building would be merely the sum of the rental value of all the rentable rooms. This was the measure of damages adopted in *Hodgkins* v. *Price,* 141 Mass. 162, 5 N. E. 502, 503, where plaintiff sought to recover damages for the detention of a building used for business purposes and let to several tenants. The court said:

"In determining what were the plaintiff's damages upon this basis, the assessor deducted, from the gross rents and profits which might have been received from the estate, a fair compensation for the necessary time and labor involved in the care and management of the premises, and in the collection of rents. This was right. The buildings described in the plaintiff's lease were designed and adapted for stores and offices, and were underlet to the tenants for such purposes. A fair measure of the value of the lease to the plaintiff is the amount he could realize by prudent management over and above the rent and charges he would be obliged to pay. In order to receive his rents and profits, if he had been in possession, he would have been obliged either to pay such sum, or to furnish its equivalent in his own labor and services."

See also *Wallace* v. *Berdell,* 101 N. Y. 13, 3 N. E. 769; *McDonald* v. *Rankin,* 92 Ark. 173, 122 S. W. 88; *International Harvester Co.* v. *Chicago, M. & St. P. Ry. Co.,* 186 Iowa, 86, 172 N. W. 471.

It is contended by plaintiff that if the defendants seek to have any deductions on account of expenditures the burden is upon them to prove such expenditures. This contention may be true if we assume that it is first proven what the rental value of the apartment house is according to the true measure of damages. When that is once established, then if the defendants have paid or incurred other obligations such as taxes or substantial repairs, they might be entitled to prove such expenditures, and if proved, be credited therewith. *Atkins' Ex'x* v. *Atkins,* 87 Vt. 376, 89 A. 643; *McDonald* v. *Kenney,* 101 Ark. 9, 140 S. W. 999. This question is not before us for decision, however, as no such expenditures have been shown in the evidence. We conclude, therefore, that there was no competent evidence in the record upon which to base a judgment for the rental value or value of the use and occupation of the apartment house during the time it was unlawfully detained by defendants.

Since the cause must be remanded for a new trial, it is necessary that we pass upon other points raised by this appeal.

The plaintiff seeks judgment for damages for the period from and after the filing of her complaint to and including the date of the trial. The judgment of the court includes damages for this period. This is assigned as error. Defendants contend plaintiff is not entitled in this action, without filing a supplemental complaint, to damages for the time beyond the time of the filing of the amendment ■ to the complaint wherein she prayed for damages. If this be true, she would be limited in her recovery to the period between the 27th and 31st of January only. This contention is unsound. The complaint alleged that the rental value of the premises was $7.50 per day without any limitation of lime. The pleading is sufficient to entitle a recovery for damages proved accruing to the planitiff during the entire period of unlawful detainer up to the time of trial. This is the rule which was adopted in California prior to the enactment in this state of the unlawful detainer statute which was taken from California. It was there held that proof of damages may extend up to the time of trial as to all facts which flow as a natural result from the injury for which the suit is brought. *Hicks* v. *Herring*, 17 Cal. 566. In *Sunday* v. *Moore*, 135 Wash. 414, 237 P. 1014, 1016, it is said:

"The court allowed, as an element of damage, the value of the use of the premises accruing between the time of the ejection and the time of the trial, and it is contended that this is not a proper element of damage. But we think the contention without foundation. This element of damage was claimed in the complaint, and the statute provides (Id. section 827) that the court in this form of action shall assess the damages 'alleged in the complaint and proved on the trial,' occasioned to the plaintiff by any forcible entry, or by any forcible or unlawful detainer. Manifestly, the loss of the use of the premises— in other words, the loss of the rental value—is a damage suffered by the person from whom the property is unlawfully detained. The authorities generally so announced the rule. Thus, in 26 C. J. 863, section 136, where the cases will be found collected, the rule is stated in this language:

" 'Where under the statute damages are recoverable, the value of the rents and profits of the land is an element of damage which is

generally to be taken into consideration, without regard to the nature or extent of the right or title by which possession was held, and according to some decisions this is the measure of damages.'"

To the same effect are *Flournoy* v. *Everett,* 51 Cal. App. 406, 196 P. 916; *Pfitzer* v. *Candeias,* 53 Cal. App. 737, 200 P. 839.

Defendants assign error in the striking of their counter-claim. In this counterclaim they attempted to set forth a cause of action in tort for unliquidated damages arising out of the levy of a writ of attachment in another action and alleged interference with tenants. It has been held by this court in the case of *Dunbar* v. *Hansen,* 68 Utah 398, 250 P. 982, 984, that a counterclaim in an action for unlawful detainer is not permissible. The court says:

"We are therefore met at the threshhold of the consideration of the merits of this appeal with the query, Could the defendants, in a statutory unlawful detainer proceeding, aver facts as a defense that in other cases would constitute a counterclaim or offset against the plaintiffs; or could the court, under the statute, entertain or permit a defense in the nature of a counterclaim or set-off against a complaint in unlawful detainer?

"Section 6576, Comp. Laws Utah 1917, defining a counterclaim, is identical with section 438 of the California Code of Civil Procedure. In fact, this section of our Code was taken from the California Code. The California courts have had occasion to consider the identical question presented here in several cases. In the course of the opinion in *Arnold* v. *Krigbaum,* 169 Cal. 143, 146 P. 423, Ann. Cas. 1916D, 370, the court says:

" 'It appears to be thoroughly established, both in this state and in other jurisdictions having substantially similar statutes to our unlawful detainer statutes, that neither a counterclaim nor cross-complaint of any kind is permissible in an action in unlawful detainer. This question was discussed by the District Court of Appeal of the First District, in the recent case of *Knight* v. *Black,* 19 Cal. App. 518, 126 P. 512, where many authorities are cited. There is no distinction in the authorities between cases where the subject-matter of the attempted counterclaim or cross-complaint arises out of a violation of the terms of the lease upon which the action is brought, and other cases.' "

After citing a number of cases and quoting extensively from them, the court says:

"We have found no case, under a statute like ours, holding a different rule than that stated in the foregoing authorities. We are therefore of the opinion, and so hold, that the action of the district court in attempting to adjudicate whatever rights defendants may have, if any, against the plaintiffs, or either of them, by reason of the facts set forth in the counterclaim, was nugatory and of no avail; that the statute does not authorize any such defense or any affirmative relief against the plaintiffs in an unlawful detainer action."

It is contended, however, by the defendants, using their own language, that:

"In the case at bar, prior to trial defendants tendered the possession of the premises to plaintiff. As the action stood at the time of trial, there was nothing to be tried, except the single issue of damages; that is to say, the amount of rent to which plaintiff was entitled to recover from defendants as tenants at will. No good reason can be advanced why, under these circumstances, damages suffered by defendants as the direct result of plaintiff's wrongful acts in practically evicting defendants from the possession of the premises for which rental is sought to be recovered, cannot be set off against plaintiff's claim for rental thereof."

One answer to this contention is that at the time the trial court sustained the motion to strike there was no such limitation of the issues. The disclaimer and tender of possession was made on the eve of the trial some months after the counterclaim had been stricken. There was then no offer to amend by reinstating the counterclaim. A more conclusive answer, however, is found in *Dunbar* v. *Hansen,* supra. In that case, as in this, the question of possession had been eliminated and the trial was had on issues raised by the counterclaim. This court said that the issues raised by the counterclaim could not be tried in that action, and that: "It was error on the part of the court to attempt to adjudicate the rights of the defendants against plaintiffs, if any they had, growing out of the facts alleged in the counterclaim in this action, and in overruling the objections of plaintiffs to

entertaining any testimony in support of the allegations of the counterclaim." The remedies open to defendants under such a state of facts are pointed out by the court in *Dunbar* v. *Hansen*.

Defendants next urge that the court erred in overruling their demurrer to plaintiff's complaint. They contend that because the notice served upon them to vacate the premises did not give them the alternative of performing the condition of their agreement with respect to which ■ they were in default, the complaint did not state a cause of action; the notice being set out in the complaint. In other words, the notice should have been served, and subsequent action brought, pursuant to Comp. Laws Utah 1917, § 7315, subd. 5, whereas the plaintiff relied upon and proceeded under subdivision 2 of said section. This is without merit. The agreement under which defendants were in possession of the premises made them tenants at will of the plaintiff upon failure to comply with any of its terms "or upon failure to make any payment when the same shall become due or within sixty days thereafter." The notice to quit was served in accordance with subdivision 2 of section 7315, which provides that a tenant at will of real property is guilty of an unlawful detainer "where he remains in possession of such premises after the expiration of a notice of not less than five days."

Plaintiff cross-appealed and has raised two questions which must be considered. She claims the court erred in failing to allow plaintiff an attorney's fee and bases ■ her claim upon the following provision of the contract of purchase:

"The buyer agrees to pay all costs and expenses which may arise from enforcing this agreement, including a reasonable attorney's fee."

The contract provided that upon the failure of the purchaser to comply with the terms thereof "the seller may at his option re-enter and take possession of said premises

without legal process as in its first and former estate."
She contends that when she declared a forfeiture and served
notice upon the defendants to give up possession of the prem-
ises it became their duty under the terms of the agreement
to permit the re-entry and repossession of the premises by
her; that because of their refusal so to do she was compelled
to commence this action and incur an attorney's fee to en-
force her right to re-entry and repossession under the con-
tract. The only case cited in support of this contention is
*Parish* v. *Studebaker*, 50 Cal. App. 719, 195 P. 721, 723.
This was an action in eviction claiming rentals past due and
damages for unlawful detainer. It was there held that an
attorney's fee was recoverable under the provision in the
lease which reads as follows:

"It is further agreed that in the event said party of the first
part shall commence any action to enforce any of the provisions of
this lease, or any of its rights hereunder, that in any judgment re-
covered by it a reasonable attorney's fee shall be included."

A comparison between this provision and the one quoted
above will show that the latter provision is much broader,
in that it includes not only the enforcement of the provisions
of the lease but "or any of its rights hereunder." The con-
tract between the parties hereto provides for an attorney's
fee in "enforcing this agreement." This is not an action to
enforce the agreement. Plaintiff has proceeded upon the
theory that the agreement fixed the status of the parties
after forfeiture and that thereupon defendants became ten-
ants at will. Upon the giving of the notice required by the
statute this tenancy ceased, and thereafter defendants held
possession of the premises unlawfully. The action is sum-
mary and limited and is one for recovery of possession of
property and damages because of the unlawful detention.
No attempt is made to enforce any of the provisions of the
contract. The action is not one on contract. The law and
not the contract fixes the measure of damages. No pro-
vision is made in the law for an attorney's fee in this sort

of action. *Arnold* v. *Krigbaum* 169 Cal. 143, 146 P. 423, Ann. Cas. 1916D, 370; *Harris* v. *Bissell,* 54 Cal. App. 307, 202 P. 453.

An important question to be determined is whether under our statute damages assessed for the unlawful detainer must be trebled. The court first held the view that the statute required a trebling of damages and judgment was given accordingly. On motion of defendants the conclusions of law were modified by striking the words "that said damages be trebled according to law" and judgment was thereupon rendered for the amount of damages then determined by the court. Our statute on this subject, Comp. Laws Utah 1917, § 7324, so far as necessary for consideration here, reads as follows:

"The jury, or the court if the proceeding be tried without a jury, shall also assess the damages occasioned to the plaintiff by any forcible entry, or by any forcible or unlawful detainer, and any amount found due the plaintiff by reason of waste of the premises by the defendant during the tenancy, alleged in the complaint and proved on the trial, and find the amount of rent due, if the alleged unlawful detainer be after default in the payment of rent; and the judgment shall be rendered against the defendant guilty of the forcible entry, or forcible or unlawful detainer, for the rent and for three times the amount of the damages thus assessed."

In the absence of statutory provisions expressly authorizing it, damages cannot be recovered in an action for unlawful detainer. The only relief would be restitution of the premises. 26 C. J. (Forcible Entry and Detainer, par. 134) 862. The same rule would apply as to rents and waste. Our statute, however, provides not only for restitution of the premises but also for rents, waste during tenancy, and damages. The provision for damages in three times the amount of damages is highly penal and therefore subject to strict construction. While the statute provides for recovery of rents, damages, and waste, it is damages only that are to be trebled. The wording of the statute is "judgment shall be rendered against the

defendant guilty of the forcible entry, or forcible or unlawful detainer, for the rent and for three times the amount of the damages thus assessed.'" This language has been held to require the entry of judgment for three times the amount of the damages, after a finding of damages by the jury. *Eccles* v. *Union Pacific Coal Co.*, 15 Utah 14, 48 P. 148. That action was one for forcible and unlawful detainer, but the statute applies as well to unlawful detainer. The statute as construed in *Eccles* v. *U. P. Coal Co.*, supra, makes it mandatory upon the court to render judgment for three times the amount of damages thus assessed.

The question may arise as to what is included within the term "damages." It is contended by defendants that the basis of the judgment here is for rental value or reasonable value of the use and occupation of the premises and that this comes within the term "rents" as used in the statute, rather than "damages," and that rents cannot be trebled. The statute itself indicates the meaning of the terms wherein it says that the jury shall "also assess the damages occasioned to the plaintiff by any * * * unlawful detainer." The word "rent" has reference to "the amount of any rent due, if the alleged unlawful detainer be after default in the payment of rent." The rents here spoken of are rents which accrued before default. In the present action there are no rents accruing before forfeiture. The plaintiff is entitled to recover such damages as are the natural and proximate consequences of the unlawful detainer. Clearly the loss of the value of the use and occupation of the premises, or the rental value thereof, during the period when the premises were unlawfully withheld from plaintiff, is a damage suffered by her. While damages may not be restricted to the rental value and may include more, yet the rental value during the unlawful withholding of possession is the minimum of damages. 26 C. J. (Forcible Entry and Detainer § 136) 863; *Sunday* v. *Moore*, 135 Wash. 414, 237 P. 1014; *Noyes* v. *French Lumbering Co.*, 80 Minn. 397, 83 N. W. 385; *San*

*Francisco & Suburban Home Bldg. Society* v. *Leonard,* 17 Cal. App. 254, 119 P. 405; *Harris* v. *Bissell,* 54 Cal. App. 307, 202 P. 453; *Chase* v. *Peters,* 37 Cal. App. 358, 174 P. 116; *Pfitzer* v. *Candeias,* 53 Cal. App. 737, 200 P. 839; *Anderson* v. *Sutton,* 316 Mo. 1058, 293 S. W. 770; *Hodgkins* v. *Price,* 141 Mass. 162, 5 N. E. 502; *Wallace* v. *Berdell,* 101 N. Y. 13, 3 N. E. 769. Rents, which may not be trebled, are such as accrue before termination of the tenancy. After the tenancy has been terminated by the notice required by the statute, the person in unlawful possession is not owing rent under the contract, but must respond in damages pursuant to the law. Rental value or reasonable value of the use and occupation of the premises becomes an element of damages for retaining possession. This is not rent, it is damages.

It is further contended that the court erred in amending its judgment in the particulars indicated. Since the case must be reversed on other grounds, it is not necessary to a decision that we pass upon this question.

The judgment is therefore reversed, and the cause is remanded to the district court of Salt Lake county with directions to grant defendants a new trial, and to proceed with the case in accordance with the views herein expressed. Appellants to recover costs on appeal.

CHERRY, C. J., and STRAUP, ELIAS HANSEN, and EPHRAIM HANSON, JJ., concur.