2005 UT App 326

ARIS VISION INSTITUTE, INC., a California corporation dba Aris Vision, Inc., Plaintiff and Appellee,

v.

WASATCH PROPERTY MANAGEMENT, INC., a Utah corporation; JDJ Properties, a Utah corporation; David Skalka, an individual; Brian Skalka, an individual; and Dennis Peacock, an individual, Defendants and Appellants.

No. 20040304–CA.

Court of Appeals of Utah.

July 21, 2005.

Richard D. Burbidge and Stephen B. Mitchell, Burbidge &· Mitchell, Salt Lake City, for Appellants.

R. Stephen Marshall and Erik A. Olson, Durham Jones & Pinegar, Salt Lake City, for Appellee.

Before Judges BENCH, DAVIS, and ORME.

## OPINION

BENCH, Associate Presiding Judge:

¶1 Defendants appeal a judgment in favor of Aris Vision Institute, Inc. (Aris) for forcible detainer, wrongful eviction, and conversion of personal property. We affirm.

## BACKGROUND

¶2 Aris, a California corporation, owned and operated a laser eye surgery center (the premises) located at the Woodlands Business Park in Murray, Utah. Aris owned all the equipment and furniture (collectively, "equipment") located at the premises. Aris contracted with four doctors to perform eye surgeries on the premises using Aris's equipment and hired a manager, David Skalka. Aris leased the premises from Defendant JDJ Properties, Inc. (JDJ), pursuant to a 1995 lease agreement. Defendant Wasatch Property Management, Inc. (Wasatch), a sister company and an agent of JDJ, managed the premises and collected rents from Aris.

¶3 After an industry downturn, Aris made the decision to close the business and contemplated filing for bankruptcy. On January 4, 2002, Aris terminated Skalka and provided various notices to him and various vendors that it "was in the unfortunate position of having to wind down it[s] current operations and liquidate its business prior to dissolution." In early January, Aris began negotiations with the doctors and Skalka to sell the equipment and transfer the lease. During the negotiations, Skalka and the doctors continued to occupy the premises and perform surgeries using Aris's equipment.

¶4 Aris failed to pay the January rent of $9,556.38. Skalka notified Wasatch's building manager, Dennis Peacock, and property manager, Anita Lockhart, about Aris's intention to terminate the business and file for bankruptcy. Peacock instructed Skalka to not let anyone remove the equipment from the premises.

¶5 The negotiations between Aris and the doctors proved unsuccessful. On January 22, 2002, Richard Enright, an Aris manager, came to the premises to remove Aris's equipment. Upon Enright's arrival, Skalka recited Peacock's instructions that Aris was not allowed to remove the equipment and told Enright that he should speak with Peacock directly. Peacock told Enright that, by Aris's failure to pay the January rent, it had abandoned the premises and that Defendants had seized Aris's equipment. Enright tendered a check for the January rent, but Peacock refused to accept the check or to release the equipment.

¶6 While still in the presence of Skalka and Peacock, Enright phoned Kathleen Soto, Aris's CFO. Soto spoke with Peacock and requested that Wasatch release the equipment to Aris, offering again to pay the January rent. Peacock again refused to accept the rent or to release the equipment. Enright made one more request for the equipment. Peacock responded by instructing Enright to leave the premises and threat-

ened "to have the police forcefully remove Enright if he ever returned again." Sometime during this visit, Enright requested a key from Skalka and Peacock, but both refused the request.

¶ 7 The next day, Aris's attorney, Erik Olson, filed this action. He also requested from John Dahlstrom, Defendants' attorney, permission to enter the premises and remove the equipment, and also tendered the January rent payment. Dahlstrom refused to release the equipment or to accept the tender of rent. Dahlstrom suggested that a "business solution" be considered by Aris and the doctors, basically suggesting that they resume their negotiations. Based on this suggestion, Aris again negotiated with the doctors and Skalka in hopes that they would assume the lease and purchase the equipment. Again the negotiations proved unsuccessful. Unknown to Aris, Wasatch and the doctors were negotiating a separate lease, where the doctors would occupy other space in Woodlands Business Park.

¶ 8 In early February, Skalka and the doctors relocated within Woodlands Business Park, without supervision from Wasatch. Peacock changed the locks on the premises and did not provide notice or a key to Aris. A few days later, Aris served a writ of replevin for the equipment. Dahlstrom informed Olson that Wasatch would protest the writ of replevin and seek a large bond. Based on Wasatch's assertions, Aris agreed to postpone the hearing on its writ of replevin and to help Wasatch locate a new tenant.

¶ 9 From March to June 2002, Wasatch provided Aris limited, supervised access to the premises. Peacock would unlock the premises and then supervise the visit in order to ensure that Aris did not remove any equipment. In March, during a supervised visit, Enright inventoried the equipment and discovered that sometime after his January 22 visit, two lasers had been damaged and other equipment had been removed. The missing equipment included: a Statim autoclave worth $393.60, a Compaq laptop worth $574.98, a Hansatome microkeratome worth $14,164.68, and several sunglasses worth $985.56. During another supervised visit, Peacock gave Aris permission to remove one piece of equipment but insisted that Aris was not allowed to remove any other equipment.

¶ 10 In April, Aris and Ed Barber were in negotiations for Barber to purchase some of the equipment and assume the lease. By May, the negotiations had ended, with Barber agreeing only to the sale of the equipment. Before finalizing the sale, Olson asked Dahlstrom for his consent. Dahlstrom replied that he did not anticipate a problem but that he would need to check with Wasatch. On June 10, 2002, Olson met with Barber and Peacock at the premises to close the sale. Dahlstrom stopped the transaction because Wasatch had not yet approved the sale. A few days later, Dahlstrom informed Olson that Wasatch would approve the sale only if Wasatch received all the proceeds. Aris did not agree to Wasatch's condition.

¶ 11 Later in June, Sale Lake County posted a notice of seizure on the premises for past due property taxes. After the county posted the notice, Peacock changed the locks a second time and again did not provide notice or keys to Aris. About that same time, Soto came to Utah with the intention of breaking the locks and removing the equipment. She discovered the tax notice and went to the Salt Lake County Assessor's office and paid the past due amount. She did not remove the equipment that day because it appeared that Wasatch's employees were guarding the premises.

¶ 12 After Soto's visit, Olson informed Dahlstrom that Aris intended to proceed with the lawsuit. On June 25, 2002, Dahlstrom told Olson that Aris could remove all of its equipment and represented that Wasatch never intended to withhold the equipment. Lockhart, via email, instructed Peacock to allow Aris to remove the equipment. Peacock responded with the question, "Is this correct?" Lockhart confirmed that Aris was now entitled to remove all of its equipment. On July 2, 2002, Soto removed Aris's equipment and the sale to Barber finally took place.

¶ 13 Aris proceeded with its lawsuit, and Defendants counterclaimed for unpaid rent. During the three-day bench trial, Aris introduced a written report and expert witness

testimony that the equipment had depreciated in the amount of $118,568.81 while in Wasatch's custody. Wasatch did not offer any depreciation evidence or rebuttal testimony. The district court found that Aris did not vacate or surrender the premises, but rather that Wasatch had forcefully prevented Aris from enjoying "free, unfettered access to the Premises." Additionally, the district court determined that Wasatch had seized Aris's equipment without the proper judicial process and used it as a "bargaining chip" for the unpaid rent.

¶ 14 The district court held that Defendants were liable for forcible detainer, wrongful eviction, and conversion of the equipment. The district court awarded damages for the following: depreciation in the amount of $118,568.81; missing equipment in the amount of $16,118.82; and damage to Aris's lasers in the amount of $53,000. The damages totaled $187,687.63, which the district court trebled pursuant to the forcible detainer statute. The district court additionally awarded Aris its deposit of $13,393.89, less the January rent of $9,556.38, plus costs and attorney fees. The district court dismissed Defendants' counterclaim based on its holding that Aris did not abandon the premises.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 15 First, Defendants argue that the district court erred in ruling that Aris did not abandon the premises. Utah Code section 78–36–12.3 provides a statutory presumption for abandonment. See Utah Code Ann. § 78–36–12.3 (2002). We review the district court's application of the statute to the facts of the case for abuse of discretion. See Platts v. Parents Helping Parents, 947 P.2d 658, 661 (Utah 1997). Common-law abandonment depends on the intent of the party accused of the act. See State v. Hawkins, 967 P.2d 966, 970 (Utah Ct. App.1998). The determination of intent is a question of fact, which will only be reversed if the district court's finding is clearly erroneous. See Pennington v. Allstate Ins. Co., 973 P.2d 932, 937 (Utah 1998); see also 49 Am.Jur.2d Landlord and Tenant § 250 (1995) ("[A] question of abandonment is a factual one.").

■ ¶ 16 Second, Defendants claim that the district court erred in holding Defendants liable for forcible detainer pursuant to Utah Code section 78–36–2 and for wrongful eviction. See Utah Code Ann. § 78–36–2 (2002). This issue is a mixed question of law and fact. "Matters of statutory construction are questions of law that are reviewed for correctness." Platts, 947 P.2d at 661. "Questions of fact are reviewed under the clearly erroneous standard, with deference given to the trial court." Id. "The trial court's application of law to the facts is reviewed for abuse of discretion." Id.

■ ¶ 17 Third, Defendants argue that the district court erred in holding that they converted Aris's equipment because Aris waived its conversion claim. To find a waiver, the court must ascertain whether Aris intended to waive the claim. See Soter's v. Deseret Fed. Sav. & Loan, 857 P.2d 935, 942 (Utah 1993). The determination of intent is a question of fact, and thus, will only be reversed if the district court's finding is clearly erroneous. See Pennington, 973 P.2d at 937.

■ ¶ 18 Finally, Defendants contend that the district court erred in its assessment of damages. "Because the adequacy of damages is a question of fact, we cannot overturn the trial court's findings unless they are clearly erroneous." In re Estate of Knickerbocker, 912 P.2d 969, 981 (Utah 1996).

## ANALYSIS

### I. Abandonment

■ ¶ 19 Defendants argue that Aris abandoned the premises prior to January 22, 2002. Utah Code section 78–36–12.3(3) provides:

"Abandonment" is presumed in either of the following situations: (a) the tenant has not notified the owner that he or she will be absent from the premises, and the tenant fails to pay rent within 15 days after the due date, and there is no reasonable evidence other than the presence of the tenant's personal property that the tenant is occupying the premises....

Utah Code Ann. § 78–36–12.3(3). The statute "defines 'abandonment' as vacating the premises without notice by the tenant to the landlord." *Fashion Place Assocs. v. Glad Rags,* 754 P.2d 940, 941 (Utah 1988). Defendants argue that Aris vacated the premises and failed to pay rent within fifteen days and thus, as a matter of law, abandoned the premises. The factual findings show that Aris did not directly notify Defendants of any possible absence and did not pay the January rent. However, the findings also show that the doctors were still performing surgeries on the premises using Aris's equipment, and that Aris and the doctors were in negotiations for the sale of the business. Therefore, there is "reasonable evidence other than the presence of [Aris's] personal property" that Aris was still using the premises, and thus, the district court did not abuse its discretion in ruling that there was no statutory presumption of abandonment. Utah Code Ann. § 78–36–12.3(3).

¶ 20 Similarly, there was no abandonment under the common-law definition. "A lease may be abandoned when a tenant 'voluntarily relinquishes or vacates the leased premises with the intention to terminate contractual rights to ... possession and control of the premises. The requisite intent can be shown by words or conduct.'" *State v. Hawkins,* 967 P.2d 966, 970 (Utah Ct. App.1998) (alteration in original) (quoting 49 Am.Jur.2d *Landlord and Tenant* § 250 (1995)). Whether an abandonment or surrender occurred, "was for the trial court to determine from the conduct and expressions of the parties with respect thereto." *Frisco Joes, Inc. v. Peay,* 558 P.2d 1327, 1330 (Utah 1977).

¶ 21 Defendants assert that Aris abandoned the lease by vacating the premises and turning over possession to the doctors. Whether Aris abandoned the premises depends on whether Aris intended to "'terminate contractual rights to ... possession and control of the premises,'" which is a question of fact. *Hawkins,* 967 P.2d at 970 (alteration in original) (quoting 49 Am.Jur.2d *Landlord and Tenant* § 250 (1995)); *see also Pennington v. Allstate Ins. Co.,* 973 P.2d 932, 937 (Utah 1998) ("We emphasize that intent is a question of fact."). The district court's holding that Aris did not intend to abandon the premises prior to January 22, 2002, is not clearly erroneous. Aris did not turn over contractual rights to possession to the doctors, but merely allowed the doctors to continue to use Aris's equipment while negotiations took place. *See, e.g., Ontel Corp. v. Helasol Realty Corp.,* 130 A.D.2d 639, 515 N.Y.S.2d 567 (1987) (holding that the tenant did not abandon the lease where it "was merely readying the premises in preparation for the occupancy by the proposed assignee"). Where Aris did not intend to abandon the premises prior to January 22, 2002, the district court properly held there was no abandonment. *See Hawkins,* 967 P.2d at 970.

## II. Forcible Detainer and Wrongful Eviction

¶ 22 "Both [the forcible entry and detainer] statutes and the tort action derived from them require that unless a tenant plainly abandons the premises, a landlord must resort to judicial process if he wishes to be rid of a tenant in peaceable possession." *Pentecost v. Harward,* 699 P.2d 696, 699–700 (Utah 1985). "One who resorts to self-help is liable to the evicted tenant...." *Id.*

¶ 23 Defendants argue that even if the court finds there was no abandonment, the forcible detainer statute still does not apply. The statute provides:

Every person is guilty of a forcible detainer who either: (1) by force, or by menaces and threats of violence, unlawfully holds and keeps the possession of any real property, whether the same was acquired peaceably or otherwise; or, (2) in the nighttime, or during the absence of the occupants of any real property, unlawfully enters thereon, and after demand made for the surrender thereof, refuses for the period of three days to surrender the same to such former occupant. The occupant of real property within the meaning of this subdivision is one who within five days preceding such unlawful entry was in the peaceable and undisturbed possession of such lands.

Utah Code Ann. § 78–36–2 (2002). The district court held that Defendants unlawfully

held the premises by force creating a forcible detainer under part (1) of the statute. The factual findings reflect the following: Defendants refused to allow Aris to remove its equipment from the premises, despite several requests from Aris representatives; Defendants directed Aris's representative, Enright, to leave the premises or they would contact the police; Defendants changed the locks on two occasions without notifying Aris or providing it a key; Defendants provided Aris supervised access to the premises, requiring Aris to gain permission to enter; on several occasions Defendants intentionally deprived Aris from entry onto the premises; and, "Aris did not have free and unfettered access to the premises nor could it remove its personal property." Based on these findings of fact, the district court did not abuse its discretion in holding that Defendants used "force" and "unlawfully [held] and [kept] possession of [the] real property." *Id.* § 78–36–2(1).

¶ 24 Defendants, although conceding the findings of fact, offer several arguments in their brief as to why the forcible detainer statute does not apply. First, they argue that their actions against Aris did not constitute force and, therefore, they are not liable under Utah Code section 78–36–2(1). The district court's findings that Defendants used "force, or . . . menaces and threats of violence," are supported by the evidence. *Id.* Defendants changed the locks and on one occasion threatened to call the police if an Aris representative did not leave the premises. However, even if Defendants' actions did not constitute force, they would still be liable for forcible detainer under part (2) of Utah Code section 78–36–2, where "during the absence of the occupants" Defendants unlawfully entered the premises and refused to surrender the premises to Aris. *Id.* § 78–36–2(2).

¶ 25 Second, Defendants assert that they legally could not render possession to Aris because the doctors possessed the premises, and Aris did not have the right to take possession by self-help. This argument is

not sound. Aris did not abandon the premises, and therefore, Aris still had rights to possession. Though Aris and the doctors discussed the option of the doctors assuming the lease, the negotiations were unsuccessful, and the doctors did not have any rights to the premises superior to those of Aris.

¶ 26 Third, Defendants claim that, pursuant to paragraph 20.1 of the lease, they were entitled to enter the premises and dispose of the equipment if Aris abandoned the premises. However, because there was no abandonment, this clause in the lease does not apply.

▮▮▮▮▮▮▮ ¶ 27 Fourth, Defendants assert that the forcible detainer statute does not apply because Aris did not seek restitution of the premises. Defendants argue that the statute limits relief to those seeking restitution.[1] Although "[e]very person" who commits the acts specified in the statute "is guilty of forcible detainer," *id.* § 78–36–2, Defendants cite Utah Code section 78–36–10(1), which provides that "[a] judgment entered in favor of the plaintiff shall include an order for the restitution of the premises." Utah Code Ann. § 78–36–10(1) (2002). However, that same section also provides a plaintiff with the right to be awarded damages incurred as the result of the forcible detainer. *See* Utah Code Ann. § 78–36–10(2). A tenant is therefore entitled to restitution and an award of damages upon showing the landlord's liability. *See id.* A tenant is not required to seek restitution of the premises—but may pursue such relief. *See Fowler v. Seiter,* 838 P.2d 675, 679 (Utah Ct. App. 1992) (holding that "pursuant to section 78–36–10(3), the trial court was required to treble the jury's damages award" where the court found forcible entry, even though the plaintiffs did not seek restitution); *Pentecost v. Harward,* 699 P.2d 696, 699 (Utah 1985) (holding that if the facts were viewed in the light most favorable to the plaintiff they would support an action against the defendants for forcible entry under the statute and

---

1. Defendants rely upon *Freeway Park Building, Inc. v. Western States Wholesale Supply,* 22 Utah 2d 266, 451 P.2d 778 (1969). In *Freeway Park,* unlike in the present case, the parties did not

bring an action for forcible detainer. Therefore, the court's dicta as to when the forcible detainer statute applies does not govern this case.

the tort action derived from such statute, where the party was seeking damages); *Peterson v. Platt*, 16 Utah 2d 330, 400 P.2d 507, 508 (1965) (affirming an award of damages under the forcible entry and detainer statute, without any mention of the party seeking restitution). The district court therefore properly interpreted the forcible detainer statute by awarding treble damages to Aris, even though it did not seek restitution.[2]

¶ 28 Additionally, Defendants separately assert that the district court erred in ruling that they were liable for wrongful eviction. As stated above, Aris did not abandon the premises, and therefore, it was in legal possession. Defendants wrongfully evicted Aris by not permitting Aris complete access to the premises on January 22, 2002. *See Freeway Park Bldg., Inc. v. Western States Wholesale Supply*, 22 Utah 2d 266, 451 P.2d 778, 781 (1969) (stating that a landlord cannot take the law into his own hands and evict a defaulting tenant).

### III. Conversion

¶ 29 Defendants assert that the district court erred in ruling that they converted Aris's equipment because Aris had abandoned the premises and turned over possession to the doctors. As explained above, Aris did not abandon the premises, and therefore, Defendants' argument fails. Defendants also claim that Aris waived its claim of conversion by leaving the equipment on the premises and working with Defendants to find a new tenant. The Utah Supreme Court has stated "that there is only one legal standard required to establish waiver under Utah law. . . . A waiver is the intentional relinquishment of a known right. To constitute a waiver, there must

be an existing right, benefit or advantage, a knowledge of its existence, and an intention to relinquish it." *Soter's v. Deseret Fed. Sav. & Loan*, 857 P.2d 935, 942 (Utah 1993) (citation and quotations omitted). A waiver "must be distinctly made, although it may be express or implied." *Id.* at 940 (quotations and citation omitted).

¶ 30 The district court specifically held that Aris did not waive its conversion claim. Aris agreed to postpone the hearing on its writ of replevin while the parties tried to find a new tenant for the premises. There was not a settlement between the parties, only an agreement to postpone litigation to see if a settlement could be reached. There was no expressed or implied distinctive waiver; therefore, the district court's holding was not clearly erroneous. *See id.; see also Pennington v. Allstate Ins. Co.*, 973 P.2d 932, 937 (Utah 1998) (stating that the determination of intent is a question of fact, and thus, will only be reversed if the district court's finding is clearly erroneous).

### IV. Damages

¶ 31 "One who resorts to self-help is liable to the evicted tenant for all damages proximately caused by the eviction . . . ." *Pentecost*, 699 P.2d at 700. Utah Code section 78-36-10 states that "[t]he jury or the [district] court . . . shall also assess the damages resulting to the plaintiff." Utah Code Ann. § 78-36-10. Defendants assert that the district court erred in its assessment of damages. The district court's assessment of damages is not clearly erroneous, and therefore, we do not upset its determination.[3] *See In re Estate of Knickerbocker*, 912 P.2d 969, 981 (Utah 1996). The amount of damages totaled $187,687.63,[4] and under the forc-

---

**2.** Defendants also assert that the forcible detainer statute does not apply because Defendants had a lessor's lien on the equipment pursuant to Utah Code section 38-3-1. *See* Utah Code Ann. § 38-3-1 (2001). Defendants did not raise this argument below, and therefore, cannot address it on appeal. *See Carrier v. Salt Lake County*, 2004 UT 98, ¶ 43, 104 P.3d 1208.

**3.** Defendants argue that the district court erred by awarding lost opportunity damages. Though the district court considered evidence on the issue, it did not in fact award such damages.

**4.** The dissent opposes the award of $118,000 in depreciation, stating that "depreciation is not a *measure* of recoverable damages at all." "Whether the district court applied the correct rule for measuring damages is a question of law that we review for correctness." *Mahana v. Onyx Acceptance Corp.*, 2004 UT 59, ¶ 25, 96 P.3d 893 (Utah 2004). "Generally, the measure of damages in a conversion action is the value of the converted property at the time of conversion, plus interest." *Id.* at ¶ 26. "To the extent possible, the fundamental purpose of compensatory damages is to place the plaintiff in the same

ible detainer statute, the judgment shall be "for three times the amount of damages assessed." [5] Utah Code Ann. § 78–36–10(3). We therefore affirm the award of $563,062.90.

## CONCLUSION

¶ 32 Aris did not abandon the premises where it did not intend to vacate prior to January 22, 2002. Given that there was no abandonment, Defendants are liable for forcible detainer, wrongful eviction, and conversion where they took and kept possession of the premises by self-help. Further, Aris did not waive a conversion claim by agreeing to postpone the hearing on its writ of replevin and assist Defendants in locating a new tenant. Finally, the district court properly assessed the amount of damages.

¶ 33 Accordingly, we affirm.

¶ 34 I CONCUR: JAMES Z. DAVIS, Judge.

ORME, Judge (dissenting):

¶ 35 I am baffled by the trial court's award of damages and by the majority's affirmance of the entire award. I have no problem with the award of some $16,000 to compensate the tenant for personal property that came up missing while the landlord was wrongfully in possession of the premises. Likewise, I have no qualms about an award of $53,000 to compensate the tenant for damage to its lasers while in the landlord's "care." I fail to see, however, how damages for conversion and damages for trespass to chattels can be trebled pursuant to a statute that permits the extraordinary remedy of tripling the

amount of actual damages for the forcible detainer of a real estate leasehold.

¶ 36 The severe remedy of treble damages is available because of the special status of real estate, and it is a remedy that is pretty well limited to real property contexts. *See* Utah Code Ann. § 78–38–2 (2002) (providing for trebling of damages for waste of real estate); *id.* § 78–38–3 (providing for trebling of damages to owner of land whose trees are cut down without authorization); *id.* § 78–36–10(2)(a)–(d), (3) (providing for trebling of damages for forcible entry, forcible or unlawful detainer, and waste, but not for unpaid rent). It subverts the purpose of that longstanding policy favoring real estate to treble *all* damages in an action between a tenant and landlord just because forcible detainer of the leasehold is one aspect of that litigation. *See Forrester v. Cook,* 77 Utah 137, 292 P. 206, 214 (1930) ("The provision for damages in three times the amount of [actual] damages is highly penal and therefore subject to strict construction. While the statute provides for recovery of rents, damages, and waste, it is damages only that are to be trebled.... The plaintiff is entitled to recover such damages as are the natural and proximate consequences of the unlawful detainer."), *overruled in part on other grounds by P.H. Inv. v. Oliver,* 818 P.2d 1018, 1020–21 (Utah 1991).

¶ 37 The measure of general damages for forcible detainer is the reasonable rental value of the premises for the time during which they were unlawfully detained. *See id.* at 211, 214. *Accord Monroc, Inc. v. Sidwell,* 770 P.2d 1022, 1025–26 (Utah Ct.App.1989) (relying on *Forrester,* appellate court af-

---

position he would have occupied had the tort not been committed." *Id.* In this case, the district court awarded the value of the property at the time of conversion less the end value of the property. Where Wasatch eventually returned the property to Aris, the district court, in awarding depreciation or diminishment in value, placed Aris "in the same position [it] would have occupied had the tort not been committed." *Id.*

5. The dissent asserts that damages for conversion of personal property as a result of a forcible detainer should not be trebled as required by the forcible detainer statute. Utah Code section 78–36–10 requires that damages "resulting to the plaintiff from ... forcible or unlawful detainer"

be trebled. Utah Code Ann. 78–36–10 (2002). As the dissent quotes, "the plaintiff is entitled to recover such damages as are the natural and proximate consequence of the unlawful detainer." *Forrester v. Cook,* 77 Utah 137, 292 P. 206, 214 (1930). The dissent contends, citing *Forrester,* that "general damages for forcible detainer is the reasonable rental value of the premises for the time during which they were unlawfully detained." However, the *Forrester* court merely held that the "rental value during the unlawful withholding of possession is the minimum of damages" and "damages may not be restricted to the rental value and may include more." *Forrester,* 292 P. at 214.

firmed unlawful detainer damages of $300, representing the "reasonable rental value" of the premises for the period they were unlawfully detained, but directed trebling in accordance with statute because such "rental value" is damages for unlawful detainer rather than rent, as trial court assumed). Such general damages appear not to have been awarded in this case. Insofar as the damages that were awarded might be viewed as consequential damages resulting from forcible detainer, it is settled law that consequential or "special" damages are available, if at all, only if general damages are awarded.[1] *See* 22 Am.Jur.2d *Damages* § 43 (2d ed. 2003) ("As a general rule, a verdict for special damages without an allowance for general damages is improper."). *Cf. Martineau v. Anderson*, 636 P.2d 1039, 1041–43 (Utah 1981) (noting that jury assessment of special damages without general damages is irregularity on face of verdict); *Cohn v. J.C. Penney Co.*, 537 P.2d 306, 307 (Utah 1975) (stating that if judge had believed jury's verdict only assessed special damages and not general damages, judge would not have accepted verdict) (Utah 1975); *Baden v. Sunset Fuel Co.*, 225 Or. 116, 357 P.2d 410, 411 (1960) (citing "the well-established rule" that, in order for there to be an award of special damages, there must also be an award of more than nominal damages).

¶ 38 More bizarre is the award of over $118,000 in depreciation. So far as I am aware, depreciation is not a *measure* of recoverable damages at all; rather, it is an offset against what would otherwise be the amount of damages. *See generally* Dan B. Dobbs, Law of Remedies § 5.12 at 392 (1973) ("Cost of replacement or repair, with suitable adjustment for the fact that the damaged or destroyed property was old and had depreciated in value, is perhaps the factor most commonly considered in fixing value of property without market."); *id.* § 5.12 at 394 ("A ... number of ... courts have ... allow[ed] replacement cost less accrued depreciation[.]"). To award a plaintiff depreciation as damages is bad enough, but to treble that amount on a theory that depreciation was occasioned by the forcible detainer of a real

estate leasehold is untenable given the very nature of depreciation. *See* Black's Law Dictionary 441 (6th ed.1991) (defining depreciation as the "decline in value of property caused by wear or obsolescence").

¶ 39 I would remand this matter with instructions to comprehensively reassess—and substantially reduce—the amount of damages awarded to the tenant.

---

1. Which is not to say that I necessarily agree that all consequential damages stemming from forc-

ible detainer must be trebled along with general damages.